UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------x

Y.D.,

          Plaintiff

   -v-                               No.  14CV1137-LTS

NEW YORK CITY DEPARTMENT OF
EDUCATION, NEW YORK STATE
DEPARTMENT OF EDUCATION, et al.

          Defendants.

----------------------------------------------------------x

<u>MEMORANDUM OPINION AND ORDER</u>

       On February 24, 2014, Plaintiff Y.D. ("Plaintiff") filed the original complaint in this action, individually and on behalf of her son O.B., against the New York City Department of Education ("DOE" or "City Defendant"), alleging a violation of the Individuals with Disabilities Education Act ("IDEA"), and seeking an appeal of a State Review Officer's ("SRO") determination that the DOE had offered O.B. a free appropriate public education ("FAPE") as required by the IDEA.  Plaintiff's Amended Complaint was filed on April 18, 2014, adding as defendants the New York State Education Department ("SED"), State Commissioner of Education John B. King, Jr. ("King"), State Review Officer Justyn Bates ("SRO Bates") and former State Review Officer Stephanie Deyoe ("SRO Deyoe") (collectively "State Defendants"),[1] and asserting additional claims for violations of the Equal Protection Clause of the U.S. Constitution, Section 504 of the Rehabilitation Act of 1973, the New York State

---

[1] The Amended Complaint indicates that Plaintiff asserts her claims against King, Bates and Deyoe in their official capacities only.

Constitution, the New York Human Rights Law, and New York Education Law, as well as a state law tort claim of intentional and/or negligent infliction of emotional distress.

Both the City and State Defendants have moved, pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6), to dismiss the Amended Complaint, on jurisdictional grounds and for failure to state a claim upon which relief can be granted.  The Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331 and 1367.  The Court has carefully considered all of the parties' submissions.   For the reasons stated below, the Court grants the State Defendants' motion in its entirety and grants in part, and denies in part, the City Defendant's motion.

<u>BACKGROUND</u>[2]

Plaintiff Y.D. is the mother of O.B., a child who has been diagnosed with both autism and Fragile X Syndrome, and who is classified as having an eligible disability under the IDEA.  (Am. Compl. ¶¶ 1-2, 18.)  From the age of 18 months, O.B. has received daily speech and language therapy, physical therapy, occupational therapy and individual behavioral therapy.  (<u>Id.</u> ¶ 19.)  On August 10, 2005, Defendant DOE classified O.B. as a pre-school student with a learning disability and issued an Individualized Education Plan ("IEP") calling for a specific student-to-teacher classroom ratio in a special education setting, with an hour of individual daily special education itinerant teacher support, as well as individual speech and language, physical and occupational therapy.  (<u>Id.</u> ¶ 20.)  O.B. and his mother thereafter moved to Israel, and returned to New York in July 2010.  (<u>Id.</u> ¶¶ 21-22.)  Upon returning, Y.D. notified the DOE in writing of O.B.'s autism diagnosis, and requested an evaluation for school placement.  (<u>Id.</u>. ¶

---

[2]      The facts recited herein are drawn from Plaintiff's Amended Complaint ("Am. Compl.").  (<u>See</u> Docket Entry No. 13.)

22.)  As of October 5, 2010, O.B. had not been properly evaluated by the DOE and had not received an IEP for the 2010-11 school year.  (Am. Compl. ¶ 23.)  Y.D. thereafter placed O.B. at the Rebecca School, which provides intensive services for children with neuro-developmental delays, and notified the DOE, seeking funding for tuition and after-school therapy transportation and services.  (Id. ¶¶ 23-24.)  An impartial hearing was commenced for the 2010-11 school year, and was later settled and withdrawn in January 2011.  (Id. ¶ 25.)  O.B. remained at the Rebecca School for the remainder of that school year, and his tuition was funded by the DOE.  (Id.)

On May 27, 2011, a meeting was convened to develop an IEP for O.B. for the 2011-12 school year.  (Id. ¶ 26.)  Plaintiff asserts that the IEP developed at that meeting was – and continues to be – inappropriate, and that it deprives O.B. of a FAPE.  (Id.)  On July 1, 2011, Plaintiff filed a due process complaint, pursuant to the procedures of the IDEA, asserting several procedural and substantive challenges to the May 27, 2011, IEP, and seeking reimbursement and prospective funding for tuition at the Rebecca School, as well as funding for after-school therapies.  (Id. ¶¶ 27-46.)  An impartial hearing was held over the course of the 2011-12 school year; the decision of the impartial hearing officer ("IHO") was issued on April 2, 2012.  (Id. ¶ 47.)  In that decision, the IHO found that Plaintiff had met her burden of proof, and awarded Plaintiff tuition funding with continued after-school services.  (Id. ¶ 50.)

On or about May 7, 2012, the DOE filed an appeal from the IHO's decision.  (Id. ¶ 51.)  Plaintiff alleges that this appeal was taken in order to delay implementation of the IHO's order as well as Plaintiff's reimbursement request.  (Id.)  The SRO who conducted the appellate review, SRO Bates, issued his decision on October 21, 2013.  (See Docket Entry No. 2 (Complaint), Ex. B., (the "October 2013 Decision.")  Plaintiff asserts that she did not receive SRO Bates' decision until October 24, 2013.  (Id. ¶ 54.)  Plaintiff further asserts that SRO Bates'

decision was due, pursuant to the 30-day deadline provided in N.Y.C.R.R. § 2005(k)(2), on July 16, 2012, making the decision 462 days late.  (Am. Compl. ¶ 54.)  Plaintiff notes that, in the cover letter accompanying the decision, SRO Bates wrote that "due to circumstances outside of [his] control, [he] was unable to fully review the evidence in the hearing record by the deadline." (Am. Compl. ¶ 54; Complaint Ex. B.)

Plaintiff contends that SRO Bates improperly sustained the DOE's appeal, improperly ignored the record and the IHO's findings and deprived O.B. of both due process and a FAPE.  (Id. ¶¶ 56-57.)  Plaintiff filed this action as an appeal from SRO Bates' October 2013 Decision and seeks, inter alia, the reversal of the October 2013 Decision, declarative relief on several grounds, a permanent injunction, and compensatory and punitive damages.  (See id., "The Relief Being Sought.")


DISCUSSION

In their motion to dismiss the Amended Complaint, the State Defendants contend that the state and its officers are entitled to immunity under the Eleventh Amendment to the United States Constitution with respect to most of Plaintiff's claims, that the individual defendants are entitled to judicial immunity and that the complaint fails, in any event, to state a claim upon which relief may be granted.  The City argues in its motion that Plaintiff has failed to state any viable claim.

In her responses to the motions, Plaintiff has withdrawn her First (federal Equal Protection), Fourth (New York State Constitution and Human Rights Law) and Fifth (New York Education Law) Causes of Action.  Accordingly, the Court addresses only the claims asserted in the Second (IDEA), Third (Section 504 of the Rehabilitation Act) and Sixth (Intentional and

Negligent Infliction of Emotion Distress) Causes of Action.

Legal Standards

Federal Rule of Civil Procedure 12(b)(1) provides that a complaint "is properly dismissed for lack of subject matter jurisdiction . . . when the district court lacks the statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). When a defendant is not a proper party to an action, it may move for dismissal based on lack of subject matter jurisdiction. See e.g., Lee v. Transportation Communications Union, 734 F. Supp. 578, 580 (E.D.N.Y. 1990). On a Rule 12(b)(1) motion, although courts must accept all material factual allegations as true, they are not required to draw inferences in the plaintiff's favor. See J.S. v. Attica Cent. Sch., 386 F.3d 107, 110 (2d Cir. 2004). Ultimately, a plaintiff bears the burden of demonstrating the existence of subject matter jurisdiction. See Malik v. Meissner, 82 F.3d 560, 562 (2d Cir. 1996).

When deciding a Rule 12(b)(6) motion to dismiss a complaint for failure to state a claim upon which relief may be granted, the Court assumes the truth of the facts asserted in the complaint and draws all reasonable inferences from those facts in favor of the plaintiff. See Harris v. Mills, 572 F.3d 66, 71 (2d Cir. 2009). A court is not required, however, to accept "conclusory statements" made by the plaintiff as true, nor do "legal conclusion[s] couched as factual allegation[s]" merit such deference. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 2007). In order to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). If the plaintiff has not "nudged [its] claims across the line from conceivable to plausible, [the] complaint must be dismissed." Twombly, 550 U.S. at 570.

The State Defendants' Motion to Dismiss

*Eleventh Amendment Immunity - Sixth Cause of Action*

The State Defendants move to dismiss Plaintiff's Sixth Cause of Action as barred by the Eleventh Amendment to the United States Constitution. The Sixth Cause of Action asserts a claim for intentional and/or negligent infliction of emotional distress. The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subject of any Foreign State." U.S. CONST. AMEND. XI. In other words, "[t]he Eleventh Amendment . . . serves to avoid 'the indignity of subjecting a State to the coercive process of judicial tribunals at the instance of private parties.'" Seminole Tribe of Florida v. Florida, 517 U.S. 44, 58 (1996) (quoting Puerto Rico Aqueduct and Sewer Authority, 506 U.S. 139, 146 (1993)). "'The reach of the Eleventh Amendment has been interpreted to extend beyond the terms of its text to bar suits in federal courts against states, by the own citizens or by foreign sovereigns.'" Monserrate v. New York State Senate, 695 F. Supp. 2d 89, 97 (S.D.N.Y. 2010) (quoting State Employees Bargaining Agent Coalition v. Rowland, 494 F.3d 71, 95 (2d Cir. 2007) (internal alterations and quotation marks omitted)). The Eleventh Amendment "plainly deprives the federal court of jurisdiction" of claims brought against both states and state agencies. See Oliver Schools, Inc. v. Foley, 930 F.2d 248, 251 (2d Cir. 1991); see also Kentucky v. Graham, 473 U.S. 159, 169 (1985) ("The Court has held that, absent waiver

by the State or valid congressional override, the Eleventh Amendment bars a damages action against a State in federal court . . . This bar remains in effect when State officials are sued for damages in their official capacity.").

The Second Circuit has held that the SED is an agency of New York State that is entitled to Eleventh Amendment immunity.  See Sherman v. Harris, No. 11CV4385-DLI-JMA, 2012 WL 4369766, at *6 (E.D.N.Y. Sep. 24, 2012) ("The New York State Education Department is a state agency entitled to Eleventh Amendment immunity") (citing Bd. of Educ. of the Pawling Cent. Sch. Dist. v. Schutz, 290 F.3d 476, 480 (2d Cir. 2002)).  Eleventh Amendment immunity therefore also extends to SRO Bates and former SRO Deyoe, who are SED employees being sued in their official capacities.  See Schutz, 290 F.3d at 480.

Invoking the doctrine of Ex Parte Young, which provides an exception to Eleventh Amendment immunity that allows for claims for prospective injunctive relief against state officials acting in their official capacities, Plaintiff asserts that the Court has jurisdiction to entertain her Sixth Cause of Action as against the individual State Defendants insofar as it seeks declaratory or injunctive relief.  See Ex Parte Young, 209 U.S. 123 (1908); see also Alden v. Maine, 527 U.S. 706, 757 (1999) ("The rule [establishing Eleventh Amendment immunity], however, does not bar certain actions against state officers for injunctive or declaratory relief.") Plaintiff points out that she has "asserted claims for declaratory relief based on prospective conduct," (Memorandum of Law in Opposition to the State Defendants' Motion to Dismiss ("State Opp. Memo"), Docket Entry No. 42 at p. 7), and requested "an Order permanently enjoining Defendants from engaging in and continuing the conduct alleged herein."  (Id.)

Plaintiff's arguments are unavailing.  Insofar as she seeks declaratory or injunctive relief with respect to her state law intentional and negligent infliction of emotional

distress claims, "[i]t is well settled that federal courts may not grant declaratory or injunctive relief against a state agency based on violations of state law." <u>Monserrate</u>, 695 F. Supp. 2d at 97 (quoting <u>Bad Frog Brewery, Inc. v. N.Y. State Liquor Auth.</u>, 134 F.3d 87, 93 (2d Cir.1998)). Thus, the doctrine of <u>Ex Parte Young</u> is ineffective to preserve Plaintiff's state law claims against the SED, SRO Bates and former SRO Deyoe or Commissioner King.  Plaintiff's claims for intentional and/or negligent infliction of emotional distress are thus barred with respect to the State Defendants, and her Sixth Cause of Action is dismissed as against Defendants Bates, Deyoe and King.[3]

### IDEA Claim - Second Cause of Action

New York has waived its sovereign immunity with respect to IDEA claims.  <u>See</u> <u>Schutz</u>, 290 F.3d at 480.  Accordingly, the Court addresses the State Defendants' arguments as to the viability of Plaintiff's Second Cause of Action.

The State Defendants argue that they are not proper parties to Plaintiff's claim under the IDEA.  Section 1415(i)(2)(A) of Title 20 of the United States Code, which codifies the private right of action available under the IDEA, provides that "[a]ny party aggrieved by the findings and decision made [in an impartial due process hearing conducted by a local

---

[3]     Plaintiff also fails to allege facts from which the Court might plausibly infer that the State Defendants' conduct rises to the outrageous or extreme level required to assert a claim for intentional infliction of emotional distress.  <u>See</u> <u>Howell v. N.Y. Post</u>, 81 N.Y.2d 115, 122 (1993).  Nor has she plausibly alleged "injuries, physical or mental, incurred by fright negligently induced," as required to make out a claim for negligent infliction of emotional distress.  <u>See</u> <u>Geiger v. E.I. DuPont Nemours & Co., Inc.</u>, No. 96CV2757-LAP, 1997 WL 83291, at *12 (S.D.N.Y. Feb. 27, 1997) (quoting <u>Allinger v. Utica</u>, 641 N.Y.S.2d 959, 960 (App. Div. 4th Dep't 1996)).  Thus, even if Eleventh Amendment immunity did not bar her tort claims against the State Defendants, Plaintiff's Sixth Cause of Action for intentional and/or negligent infliction of emotional distress would properly be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.

educational authority] . . . shall have the right to bring a civil action with respect to the <u>complaint</u> presented pursuant to this section . . . in any State court of competent jurisdiction or in a district court of the United States." <u>See</u> 20 U.S.C.S. § 1415(i)(2)(A) (LexisNexis 2006) (emphasis supplied).  The "complaint" authorized by Section 1415 is, as here relevant, one with respect to the local educational authority's failure to provide a FAPE. <u>See</u> 20 U.S.C.S. § 1415(b)(6).  The Second Circuit has recognized that this is the sole private right of action permitted by the IDEA. <u>See</u> <u>County of Westchester v. New York</u>, 286 F.3d 150, 152 (2d Cir. 2002) ("Since Congress expressly provided a private right of action in favor of . . . any party aggrieved by particular findings or a decision rendered under subsection 1415, see 20 U.S.C. § 1415(i)(2)(A), but did not expressly provide a private right of action in favor of [others] . . . we find it extremely unlikely that Congress intended to [create additional private rights of action under the IDEA.]"); <u>see also</u> <u>Scaggs v. New York Dept. of Educ.</u>, No. 06CV0799-JFB-VVP, 2007 WL 1456221, at *9 (E.D.N.Y. May 16, 2007) ("In the absence of any support for the notion that another section of the IDEA statute permits plaintiffs to bring the instant claims or that an implicit private right of action is available under the Act, the Court finds that any IDEA claims must be brought pursuant to Section 1415.").

Thus, the IDEA only authorizes a private right of action with respect to a local educational authority's alleged failure to provide a prospective plaintiff with a FAPE.  The SED is not a participant in the IEP process; it is merely a reviewer.  Any controversy concerning whether a given IEP provides a FAPE is one between the aggrieved student and the relevant <u>local</u> educational agency, to which the SED and its officers are not parties in interest. <u>See</u> <u>B.J.S. v. State Educ. Department/University of State of New York</u>, 699 F. Supp. 2d 586, 599 (W.D.N.Y. 2010) ("the controversy over the propriety of the IEP and whether it deprives the

student of an FAPE remains one between the student . . . and the local educational agency because, under the Act, the primary responsibility for formulation and implementation of an . . . IEP is that of . . . the School District, not State Defendants.  Nothing in the Act either directly or impliedly suggests that by their compliance with the Act's requirement to provide impartial review of an administrative complaint attacking an IEP, State Defendants thereby become parties to the underlying dispute.").  Because the SED and its representatives are not "parties to the underlying dispute" for the purposes of Section 1415, they are not proper parties to a private lawsuit brought pursuant to that section.  See B.J.S. v. State Educ. Department/University of State of New York, No. 07CV456A(F), 2011 WL 3651051, at *18 (W.D.N.Y. Aug. 18, 2011) ("this court, as well as other district courts within New York, have concluded that NYSED may not be sued as a defendant to an IDEA action brought pursuant to § 1415(i)(2)(A) challenging the failure to provide an eligible student with a proper IEP to effectuate an FAPE"); see also 8 N.Y.C.R.R. § 279.1(c)(1) (prohibiting the SED from appearing as a party before a State Review Officer).  This reasoning also extends to Commissioner King, as well as SRO's Bates and Deyoe, who are all sued in their official capacities only.[4]

     In addition, "the fact that the New York commissioner of education enjoys general supervisory authority over public education in New York . . . is an insufficient basis upon which to impose legal responsibility upon [the] State Education Department . . . based on a determination that the [local] School District violated [a] Plaintiff's right to a properly formulated and implemented IEP."  See B.J.S., 699 F. Supp. 2d at 602 (emphasis added).  Courts

---

[4]    Moreover, Plaintiff has failed to allege a single fact with respect to the involvement of either Commissioner King or former SRO Deyoe in the events underlying this case, and thus has clearly failed to state a claim as against either of these defendants.  (See generally Am. Compl.)

have therefore consistently held that the IDEA's private right of action does not authorize claims against State agencies that are rooted in the State's general supervisory role under the IDEA. See e.g., C.B. v. Board of Educ. Of Syosset School Dist., No. 96CV5752-FB, 1998 WL 273025 (E.D.N.Y. Jan. 15, 1998) ("broad and conclusory allegations that [a state education department] has failed to meet its statutory responsibilities do not state a claim under the IDEA."); see also B.J.S., 2011 WL 3651051, at *18 ("the NYSED Commissioner's exercise of general supervisory authority over the administration of public education within New York . . . does not alter the court's finding that neither Commissioner Mills, SRO Kelly, nor [the] NYSED, headed by the Commissioner, is a proper party to an action pursuant to § 1415(i)(2)(A) to review a local school board's decision regarding a disabled student's IEP.").  In this connection, the Second Circuit has recognized that the IDEA establishes no "specific requirements" with respect to a state educational agency's supervisory responsibilities.  The generality of the statutory command supports the conclusion that a state agency cannot be sued for failing to adequately discharge its supervisory role.  See A.A. ex rel. J.A. v. Philips, 386 F.3d 455, 459 (2d Cir. 2004) ("the [state educational agency] has discretion to work with the [local educational agency] to ensure compliance with the IDEA . . . [so it] would be odd indeed if the state agency given discretion to monitor compliance with [the IDEA] were forced to shoulder the burden of establishing the adequacy of its efforts when confronted with merely a complaint in federal court.").  In light of these principles, courts have consistently held that the State Education Department and its employees are not proper parties to IDEA actions in federal court.  See e.g., Matter of Board of Educ. Of Baldwin Union Free School District v. Sobol, 160 Misc. 2d 539, 434-44 (Sup. Ct. Nassau Co. 1994) ("The SRO acts solely in an appellate capacity and is not a party to the administrative proceeding nor therefore a proper or necessary party to this proceeding [to

overturn an SRO decision]"); see also Matter of Sackets Harbor Cent. School Dist. v. Munoz,

283 A.D.2d 756, 760 (App. Div. 3d Dep't 2001).

Plaintiff notes that courts within the Second Circuit have found state education

departments and administrators to be proper parties in IDEA suits where plaintiffs have alleged

systemic violations of the IDEA.  (See State Opp. Memo at p. 8.)  Plaintiff has not, however,

alleged any systemic violation here.  A systemic violation of the IDEA involves "complain[ts] of

wrongdoing that [are] inherent in the program itself and not directed at any individual child."

See J.S. v. Attica Cent. Sch., 386 F.3d 107, 110 (2d Cir. 2004).  Thus, a challenge to the

propriety of a particular student's IEP does not raise an issue of "systemic violation."  Kalliope

R. v. New York State Educ. Dept., 987 F. Supp. 2d 130 at n.3 (E.D.N.Y. 2010) ("courts have

dismissed cases against state educational agencies in which plaintiffs sought review of an

administrative decision regarding a particular IEP development process.").  Here, Plaintiff's

IDEA allegations relate solely to O.B. and the propriety of his IEP.  (See Am. Compl. ¶¶ 71-81.)

With respect to the State Defendants, Plaintiff has alleged only that O.B. did not receive a FAPE,

that SRO Bates' decision on her appeal was late and that the State Defendants failed "to provide,

implement, correct monitor, supplement, review and/or modify" the IEP.  (See id. ¶¶ 49, 54, 80,

86.)  Each of these allegations is entirely specific to O.B.'s case and, taken together, they fail to

present a set of facts from which a court might infer that a "systemic" violation of the IDEA has

occurred.  The Court thus concludes that the SED, SRO's Bates and Deyoe and Commissioner

King are not proper parties to this action with respect to Plaintiff's IDEA claim and grants the

State Defendants' motion to dismiss with respect to Plaintiff's Second Cause of Action.

*Rehabilitation Act Claim - Third Cause of Action*

A plaintiff must demonstrate something beyond the insufficiency of an IEP in order to state a claim under Section 504 of the Rehabilitation Act in the context of education of disabled children.  "'That a court may ... come to the conclusion that an incorrect evaluation has been made, and that a different placement must be required under [the IDEA], is not necessarily the same thing as a holding that a [disabled] child has been discriminated against solely by reason of his or her [disability]' . . . Therefore, something more than a mere violation of the IDEA is necessary in order to show a violation of Section 504 in the context of educating children with disabilities, i.e., a plaintiff must demonstrate that a school district acted with bad faith or gross misjudgment."  Wenger v. Canastota Cent. School Dist., 979 F. Supp. 147, 152 (S.D.N.Y. 1997) (quoting Monahan v. Nebraska, 687 F.2d 1164, 1170 (8th Cir. 1982)); see also C.L. v. Scarsdale Union Free School Dist., 744 F.3d 826 (2d Cir. 2014) ("evidence of bad faith or deliberate indifference [is] required to establish a Rehabilitation Act claim.").  Allegations merely demonstrating disagreement with an IEP are thus insufficient to state a Rehabilitation Act claim.  Courts in this district will therefore dismiss Section 504 claims that "are, in actuality, merely restatements of [a plaintiff's] IDEA claims," where plaintiff fails to offer any facts that he "was denied a federal benefit because of his disability."  Pinn ex rel. Steven P. v. Harrison Central School Dist., 473 F. Supp. 2d 477, 484 (S.D.N.Y. 2007) (emphasis in original).

Here, Plaintiff has alleged nothing in support of her Rehabilitation Act claim beyond her disagreement with the IEP offered by the DOE.  It follows that Plaintiff's Section 504 cause of action is no more than a restatement of her IDEA claim.  She makes no allegation of bad faith or gross misjudgment on the part of the State Defendants.  (See Am. Compl. ¶¶ 82-92.)  Nor does she allege any facts indicating a violation of Section 504 by the State Defendants,

proffering simply the conclusory allegation that the State Defendants "violated plaintiff's 504

rights because of O.B.'s disability." (See id. ¶ 87.) Plaintiff does allege that SRO Bates

delivered his decision "462 days late in violation of the statutory 30 day deadline," (id. ¶ 54), but

points to no facts from which the Court might infer that SRO Bates acted in bad faith in missing

the statutory deadline. To the contrary, Plaintiff acknowledges that SRO Bates included, along

with his late-issued decision, an apologetic letter in which he indicated that "due to

circumstances outside of [his] control, [he] was unable to fully review the evidence in the

hearing record by the deadline." (Am. Compl. ¶ 54.) The Court therefore finds that Plaintiff has

failed to plead plausibly a claim for a violation of Section 504 of the Rehabilitation Act, and

grants the State Defendants' motion insofar as it is directed to the Third Cause of Action.

Plaintiff has failed to advance any viable claims as against the State Defendants.

The Court therefore grants the State Defendants' motion to dismiss in its entirety.


The DOE's Motion to Dismiss

*IDEA Claim - Second Cause of Action*

The DOE has moved to dismiss Plaintiff's IDEA claim as time-barred. (See

Memorandum of Law in Support of the City Defendant's Motion to Dismiss the Amended

Complaint ("DOE Memo") at pp. 5-7.) The IDEA allows a party seeking review of an SRO's

decision to bring an action, in state or federal court, "90 days from the date of the decision of the

hearing officer . . . or, if the State has an explicit time limitation . . . in such time as the State law

allows." See 20 U.S.C. § 1415(i)(2)(B). New York state supplies its own explicit time

limitation: the New York Education Law provides that a civil action brought to review an SRO

decision "shall be commenced within four months after the determination to be reviewed

becomes final and binding on the parties."  <u>See</u> N.Y. Educ. Law § 4404(3)(a).  Thus, "[i]n New

York, th[e] time limit [to file an IDEA claim appealing an SRO's decision] is four months after

the SRO's decision is final."  <u>Piazza v. Fla. Union Free Sch. Dist.</u>, 777 F. Supp. 2d 669, 688

(S.D.N.Y. 2011).  The DOE argues that SRO Bates issued his final decision on October 21, 2014

(<u>see</u> Complaint, Ex. B at p. 29) and that the decision became final and binding upon its issuance.

Thus, according to the DOE, Plaintiff had until February 21, 2014, to file her federal court

action.  Plaintiff did not commence this action until February 24, 2014 – three days beyond the

deadline asserted by the DOE.  (<u>See</u> Docket Entry No. 2.)  Thus, the DOE argues, Plaintiff's

IDEA claim is time-barred.

        In response, Plaintiff argues that her IDEA claim accrued not on the date on

which SRO Bates <u>issued</u> his decision, but rather the date on which she <u>received</u> it: October 24,

2014, thus rendering this suit timely.  (<u>See</u> Am. Compl. ¶¶ 54-55.)  In support of her position,

Plaintiff cites several cases for the proposition that "[t]he four month statute of limitations for

IDEA claims does not begin to run until the parents receive notice of the final decision."  <u>See</u>

<u>e.g.</u>, <u>Essen v. Bd. of Educ. of Ithaca City School Dist.</u>, No. 92CV1164-FJS-GJD, 1996 WL

191948, at *7 (N.D.N.Y. Apr. 15, 1996).  The DOE argues the cases cited by Plaintiff are

inapposite because they pre-date the 2006 amendment to New York Education Law § 4404(3)(a)

that explicitly imposed the four-month statute of limitations, noting that the cases cited by the

Plaintiff were decided when IDEA claims in the Second Circuit borrowed the four-month statute

of limitations for review of administrative decisions applied under Section 217 of the New York

Civil Practice Law and Rules ("C.P.L.R.").  <u>See</u> <u>Essen</u>, 1996 WL 191948, at *7.

        However, the 2006 amendment adopted language identical to the statute of

limitations language that had previously been borrowed from the state administrative review

context.  C.P.L.R. Section 217 had widely been interpreted to impose a limitation period running from the aggrieved person's receipt of the decision to be reviewed.  DOE has proffered nothing to indicate that the new statute was meant to alter the meaning of the language drawn from the C.P.L.R.  None of the cases that the DOE cites for the proposition that IDEA decisions are "final" for review purposes when issued addresses any relevant controversy over the accrual of the private right of action under the IDEA.[5]  The DOE has failed to refute Plaintiff's allegation that she did not receive notice of SRO Bates' decision until October 24, 2014, and therefore has failed to meet its burden with respect to its statute of limitations affirmative defense.  See Matter of Bill's Towing Serv., Inc. v. County of Nassau, 83 A.D.3d 698, 699 (App. Div. 2d Dep't 2011) ("The burden rests on the party seeking to assert the statute of limitations as a defense to establish that the petitioner was provided notice of the determination more than four months before the proceeding was commenced.") (emphasis added).

Thus, because the DOE has failed to demonstrate that Plaintiff's IDEA claim is untimely, the DOE's motion will be denied insofar as it seeks dismissal of that claim.

*Rehabilitation Act Claim - Third Cause of Action*

As explained above, in order to plead a facially plausible Rehabilitation Act Section 504 claim in the context of education of a disabled child, a plaintiff must plead facts indicating that the defendant acted with bad faith or gross misjudgment that exceeds the mere issuance of an IEP with which the plaintiff disagrees.  Plaintiff has failed to state a viable

---

[5]     The DOE cites Keitt v. New York City, 882 F. Supp. 2d 412 (S.D.N.Y. 2011), in support of its argument, but the timeliness issue in that case related to the age of the student at issue, not the point at which the SRO's decision became final and binding. Likewise, in M.A. v. New York Dept. of Educ., 1 F. Supp. 3d 125 (S.D.N.Y. 2014), there does not appear to have been any timeliness issue that sheds light on the proper interpretation of the IDEA's post-amendment statute of limitations language.

Section 504 claim against the State Defendants, and her Amended Complaint is similarly deficient as to the DOE.

In her opposition briefing and in the Amended Complaint, Plaintiff asserts that the DOE's appeal to the SRO was an intentional and willful tactic meant to stall O.B.'s access to a FAPE.  (See Am. Compl. ¶¶ 51, 54.)  This argument is unavailing.  Plaintiff's allegation that the DOE's appeal, which was ultimately successful, was a bad faith stalling tactic is entirely conclusory and is therefore insufficient to state plausibly a claim for violation of Section 504.  For these reasons, as well as those discussed with respect to the State Defendants, Plaintiff's Third Cause of Action is dismissed as against the DOE.

*Intentional or Negligent Infliction of Emotional Distress - Sixth Cause of Action*

A claim of intentional infliction of emotional distress under New York law has four elements: "(i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress."  Howell, 81 N.Y.2d at 121.  "To recover for negligent infliction of emotional distress in New York, [a plaintiff] must show (1) that the defendant unreasonably endangered the physical safety of plaintiffs or caused them to fear for their safety, (2) causation, and (3) emotional injuries."  Schafer v. Hicksville Union Free School Dist., 06CV2531-JS-ARL, 2011 WL 1322903, at *15 (E.D.N.Y. Mar. 31, 2011).  Plaintiff has failed to plead either claim adequately with respect to the DOE.  The facts alleged in the Sixth Cause of Action touch only upon the late issuance of SRO Bates' decision, which does not implicate the DOE.  The sole allegation in the Amended Complaint that might serve as the basis for an intentional and/or negligent infliction of emotional distress claim against the DOE is Plaintiff's allegation that the DOE's alleged failure to provide O.B. with an appropriate

IEP has caused her emotional distress.  (See Am. Compl. ¶ 26; Memorandum of Law in

Opposition to the City Defendant's Motion to Dismiss, Docket Entry No. 44 at p. 12

("defendants continue to cause plaintiff severe emotional distress because plaintiff continues to

be denied a FAPE").)  This allegation, however, is entirely conclusory, and thus is insufficient to

state a claim.  Plaintiff alleges no facts demonstrating that the DOE engaged in the sort of

"extreme and outrageous conduct" necessary to state a claim for intentional infliction of

emotional distress, nor does she plead facts indicating that the DOE endangered her or caused

her to fear for her physical safety, as needed to state a claim for negligent infliction of emotional

distress.  Thus, Plaintiff has thus failed to state a claim for intentional or negligent infliction of

emotional distress as against the DOE, and the Court grants the City Defendant's motion to

dismiss the Sixth Cause of Action.

C<small>ONCLUSION</small>

For the reasons stated above, the State Defendants' motion to dismiss the

Amended Complaint is granted in its entirety.  The City Defendant's motion is granted with

respect to Plaintiff's Third and Sixth Causes of Action, and denied with respect to Plaintiff's

Second Cause of Action.  The First, Fourth, and Fifth Causes of Action having been withdrawn,

this action will go forward only as against the DOE and only with respect to the Second Cause of

Action.

This Memorandum Opinion and Order resolves Docket Entry Numbers 34 and

36.

SO ORDERED.

Dated: New York, New York
       February 19, 2016


                                            ___/s/ Laura Taylor Swain___
                                            LAURA TAYLOR SWAIN
                                            United States District Judge