```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

Y.D., individually and on behalf of her son,
O.,

                Plaintiff,

      -v-                                                  No.  14 CV 1137-LTS

THE NEW YORK CITY DEPARTMENT OF
EDUCATION, et al.,

                Defendants.

-------------------------------------------------------x
```

<u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Y.D., the mother of O., a child with autism, brought this case individually and on behalf of O. under the Individuals with Disabilities Education Improvement Act, 20 U.S.C. §§ 1400 et seq. (the "IDEA"), as an appeal from an administrative determination finding that Defendants, specifically the New York City Department of Education (the "DOE"), had provided O. with a free and appropriate public education (a "FAPE") during the 2011-2012 school year, as required by the IDEA.  This Court has jurisdiction of this action pursuant to 28 U.S.C. § 1331 and 20 U.S.C. § 1415(i)(2)(A).

Plaintiff unilaterally placed O. in a private school, the Rebecca School, for the 2011-2012 school year, and sought reimbursement for her tuition from the DOE.  Plaintiff's due process complaint asserted procedural and substantive deficiencies in the DOE's placement for O. for the 2011-2012 school year.  Following an administrative hearing, an Impartial Hearing Officer ("IHO") found that the DOE had denied O. a FAPE and ordered the DOE to reimburse Plaintiff for the Rebecca School tuition.  The DOE petitioned for further review by a State

Review Officer ("SRO") of the New York State Education Department's Office of State Review, and the SRO reversed the IHO's decision, finding that the DOE did provide O. with a FAPE, and denying Plaintiff's request for reimbursement. Plaintiff subsequently brought this case seeking review and reversal of the SRO's determination.

The parties have each moved for summary judgment.[1] (See docket entries no. 66 and 71.) Plaintiff seeks a declaration that the DOE denied O. a FAPE and full reimbursement of the tuition paid during the 2011-2012 school year; Defendants seek dismissal of the complaint. The Court has reviewed thoroughly all of the parties' submissions, including the administrative record, and for the reasons set forth below, Defendants' motion for summary judgment is granted and Plaintiff's motion is denied.

BACKGROUND

The IDEA's Statutory Framework

The IDEA requires all states receiving federal funds "to provide 'all children with disabilities' a 'free appropriate public education.'" Gagliardo v. Arlington Cent. Sch. Dist., 489 F.3d 105, 107 (2d Cir. 2007) (quoting IDEA, 20 U.S.C. § 1400(d)(1)(A)). The parties do not dispute that O., who has been diagnosed with autism, is a child with a disability. For each child with a disability, like O., the appropriate state or local educational agency must develop an "individualized education program" ("IEP") for the child. 20 U.S.C. § 1414(d). In New York, IEPs are developed by local "Committees on Special Education" ("CSEs") in conjunction with

---

[1] Plaintiff's motion is styled a motion "for modified de novo review," in light of Plaintiff's reliance on materials outside of the record before the administrative officers below; because the relief sought is a legal determination on the merits of Plaintiff's claims, the Court construes the motion as one seeking summary judgment.

the parents of the disabled student. N.Y. Educ. L. § 4402(1)(b)(1).

Parents have a right under the IDEA to present a complaint regarding the identification, evaluation, or placement of their child through the IEP process. 20 U.S.C. § 1415(b)(6)(A). Parents who disagree with the IEP developed by the CSE may unilaterally place their child in a private school, at their own risk, and then seek a retroactive reimbursement of the private school's tuition from the local school district. Id. § 1412(a)(10)(C). In order to obtain reimbursement, parents have a right under the IDEA to an "impartial due process hearing" before an IHO. Id. § 1415(f)(1)(A); N.Y. Educ. L. § 4404(1)(a). The decision of the IHO may be appealed by either party to an SRO, who conducts an independent review of the factual findings and decision of the IHO. 20 U.S.C. § 1415(g); N.Y. Educ. L. § 4404(2). Either party may then challenge the SRO's decision in federal district court, which is empowered by the IDEA to "receive the records of the administrative proceedings," to "hear additional evidence," and to "grant such relief as the court determines is appropriate" based on "the preponderance of the evidence" presented. 20 U.S.C. § 1415(i)(2)(C); see also N.Y. Educ. L. § 4404(3); Forest Grove Sch. Dist. v. T.A., 557 U.S. 230 (2009) (holding that the power of a reviewing district court includes the authority to grant reimbursement, when appropriate).

The Factual Record

The following summary of facts is drawn from the administrative record, which was submitted to the Court in connection with the instant motion practice. O., a boy, was nine years old when the 2011-2012 school year began. (Tr. 346.[2]) O. was classified as a student with autism by the DOE, a classification that is not disputed by the parties, and has also been

---

[2] Citations to "Tr." refer to the transcript of the IHO hearings.

diagnosed as Fragile X.  (IHO Dec. at 4.[3])

### The May 27, 2011 CSE Meeting and Resulting IEP

The CSE met to develop an IEP for O. for the 2011-2012 school year on May 27, 2011.  (Tr. 48, 349.)  The CSE was comprised of Y.D.; Feng Ye, a DOE special education teacher; Rose Fochetta, a DOE school psychologist; Zachary Freeman, O.'s then-teacher at the Rebecca School; and Andrea Albert, a Rebecca School social worker.  (Tr. 49-50, 349-50.)  The CSE considered the following written reports and evaluations: (1) a September 16, 2010, psycho-educational evaluation; (2) an October 28, 2010, classroom observation report by Ye; (3) a December 14, 2010, physical therapy evaluation; and (4) a May 2011 progress report from the Rebecca School, which included information provided by O.'s then-classroom teacher, occupational therapist, physical therapist, and speech therapist.  (IHO Exs. 8-11.[4])

Upon consideration of these reports and input from Y.D., Freeman, and Albert, the CSE approved an IEP recommending that O. be placed in a twelve-month program in a special education class with a ratio of up to six students to one special education teacher and one classroom paraprofessional (a "6:1:1 class"), with an additional individual paraprofessional assigned to O. on a 1:1 basis.  (Ex. 6 (the "May 2011 IEP"), at p. 15.)  The IEP also recommended that O. received speech, occupational, and physical therapy four times per week for 30 minutes individually and once per week for 30 minutes in a group of two.  (Id. at p. 17.)  The IEP also contained a behavior intervention plan for O. (Id. at p. 19) and 15 goals and 38 short-term objectives for O. to meet in both his classroom and therapeutic settings (Id. at pp. 7-

---

[3]  Citations to "IHO Dec." refer to the administrative decision of IHO Sharyn Finkelstein, as corrected, issued on April 16, 2012.

[4]  Citations to "IHO Ex." refer to exhibits introduced during the administrative hearing before the IHO.

14.)

### Plaintiff's Response to the May 2011 IEP

On June 15, 2011, Plaintiff informed the DOE that she rejected the program offered in the IEP and intended to unilaterally re-enroll O. at the Rebecca School for the 2011-2012 school year. (IHO Ex. V.) On June 22, 2011, Plaintiff signed a contract with the Rebecca School enrolling O. for the 2011-2012 school year. (IHO Ex. X.)

The DOE's final notice of recommendation ("FNR") was also dated June 15, 2011. (IHO Ex. 14.) The FNR recommended a placement for O. at D.75 169 @ P169 ("P.S. 169") to implement the IEP. (Id.) Despite having informed the DOE that she was rejecting the IEP, Plaintiff visited P.S. 169 during the week of June 20, 2011. (IHO Ex. W, at p. 2; Tr. 360-61.)

On July 1, 2011, Plaintiff's counsel filed a Due Process Complaint with the DOE formally rejecting the IEP and the proposed placement, and seeking reimbursement for tuition at the Rebecca School for the 2011-2012 school year. (IHO Ex. A.)

### Proceedings Before the IHO

The IHO held a hearing that started on July 18, 2011, and proceeded for eight days of testimony. Nine individuals testified before the IHO, and forty-four exhibits were entered into the record. In a decision that was corrected and finalized on April 16, 2012, the IHO found that the DOE failed to offer O. a FAPE for the 2011-12 school year.

Two witnesses testified for the DOE: Ye, the special education teacher who participated in O.'s CSE, and Mechaley, a special education teacher at P.S. 169. Ye testified that the CSE concluded that O. was English-language dominant and tested below any school-age level. (IHO Dec. p. 5.) The CSE also noted O.'s self-injurious behavior, which required a 1:1

paraprofessional to manage.  (Id. pp. 5-6.)  Ye testified that the CSE considered 2:1:1 and 8:2:1 placements for O., before concluding that a 6:1:1 environment was most appropriate.  (Id. p. 6.)  On cross-examination, Ye testified that the CSE did not request an independent neuro-psychological evaluation in May 2011.  (Id. p. 7.)  Ye also testified that the IEP did not contain recommendations for parent training and counseling or after-school activities for O., and that the CSE did not consider any formal assessments by the DOE except for the 2010 psycho-educational assessment.  (Id.)  Ye noted that the 2010 assessment concluded that O. was not able to be assessed.  (Id.)

Mechaley testified about the 6:1:1 classroom she leads at P.S. 169.  She testified that she was not certain that O. would have been in her class during the 2011-12 school year, but that she had reviewed O.'s IEP and had considered how it could have been implemented in her classroom.  (Id. pp. 8-9.)

Six witnesses testified for the parent: Sclar, an occupational therapist at Rebecca School; McCourt, a program director at Rebecca School; Y.D., O.'s mother; Neal, an occupational therapist who has worked with O.; Devi, a speech language pathologist who has worked with O.; and Klarg, a speech language pathologist at the Rebecca School who has worked with O.  (IHO Dec. pp. 11-30.)  As relevant to the instant proceedings, the parent's witnesses offered the following testimony.

Y.D. testified that O. is bilingual, speaking English and Hebrew, but no bilingual evaluation was performed prior to the CSE.  (IHO Dec. pp. 18-21.)  When the DOE evaluated O., Y.D. observed the evaluations, and noted that the occupational therapy evaluators could not engage O. in any activity.  (Id. p. 18.)

Y.D. also testified that she wrote to the DOE rejecting O.'s proposed placement

on June 15, 2011, and had not received a final placement at that time.  (IHO Dec. p. 21.)  Y.D. signed a contract with the Rebecca School on June 22, 2011.  (Id.)  After receiving the FNR, as noted above, Y.D. did visit the school in which the DOE proposed to place O. prior to the start of the school year.  (Tr. pp. 359-62.)

The IHO's legal analysis is relatively brief and is not clearly broken down into procedural and substantive issues, but contains findings that, inter alia: (1) the DOE should have conducted a bilingual psycho-educational observation of O. prior to the CSE; (2) O. required unspecified "additional services" that were not provided in the IEP; (3) the DOE did not provide "sufficient information about particulars of the class [O.] would have attended;" (4) the IEP did not provide a "sensory diet" and the proposed classroom would not have appropriately grouped O. based on his individual needs; and (5) the DOE "offered a placement too late in the year to provide a FAPE."  (IHO Dec. pp. 31-32.)  The IHO then found that the parent's proposed unilateral placement at the Rebecca School was appropriate (IHO Dec. pp. 34-35) and that the balance of equities favored the parent (IHO Dec. p. 36), and accordingly ordered the DOE to reimburse Y.D. for O.'s tuition at Rebecca School for the 2011-12 school year.

The SRO's Decision on Appeal

The DOE appealed the IHO's decision to the SRO, who reversed.  (SRO Dec. p. 29.[5])  The SRO concluded that the evidence before the IHO sufficed as a matter of law to establish that the DOE had offered O. a FAPE for the 2011-12 school year.  (Id.)

The SRO first addressed the timing of the FNR.  The SRO noted that Y.D. was notified of O.'s assigned school prior to the start of the school year, and was able to visit the

---

[5]      Citations to "SRO Dec." refer to the October 21, 2013, decision of State Review Officer Justyn P. Bates.

assigned school shortly after receiving the FNR and also prior to the start of the school year. (SRO Dec. p. 10.) The SRO concluded that this satisfied the procedural requirements set forth in the IDEA's implementing regulations, specifically 34 C.F.R. § 300.323[a]. (SRO Dec. p. 10.)

The SRO evaluated the evidence about the material before the CSE and found that the CSE did have appropriate evaluative material when developing O.'s IEP. Specifically, the SRO concluded that, while the DOE's failure to administer a bilingual psychoeducational evaluation to O. "constituted a procedural error," it did not rise to the level of the denial of a FAPE because it did not cause a deprivation of educational benefits or impede the parent's ability to participate in the decision-making process in light of the existence of the September 2010 psychoeducational evaluation, which reported that O. was equally delayed in both English and Hebrew. (SRO Dec. pp. 13-14.) The SRO also noted that the CSE had access to a broad array of reports from the Rebecca School, which provided detailed information about O.'s progress, including evidence that O. had been making gains in communicating in English. (SRO Dec. pp. 15-16.)

The SRO further discussed the substantive adequacy of the IEP, finding that it contained detailed descriptions of O.'s current performance and learning characteristics as well as management needs and goals that were aligned with the evidentiary record. (SRO Dec. pp. 16-18.) The SRO concluded that the IEP was substantively adequate because its descriptions and recommendations accurately reflected the evidence before the CSE, and because it sufficed to address O.'s needs based on the record evidence. (Id. pp. 18-19.)

The SRO also considered the parent's three specific objections to the IEP. First, the parent argued that the IEP did not contain an appropriate sensory diet. The SRO noted that the CSE adopted recommendations from O.'s teachers at the Rebecca School and provided for

specific goals aimed at improving O.'s ability to self-regulate. (Id. pp. 19-20.) The SRO concluded that the IEP adequately addressed O.'s sensory needs based on this evidence. (Id. p. 20.) Next, the SRO evaluated the parent's objection to the IEP's failure to provide for additional out-of-school services. Noting that courts have held that the IDEA does not require out-of-school services to be provided if the CSE determines the student will make progress in the classroom, the SRO noted that the evidence before the CSE indicated that the services provided to O. during school hours at the Rebecca School had adequately addressed his needs. (Id. pp. 20-21.) Although the SRO noted testimony that indicated that O. would likely benefit from a greater amount of services, the SRO concluded that the IEP met the requirements of the IDEA to provide an appropriate education and prevent regression, and the DOE was not required to design an IEP that aimed to maximize O.'s potential by providing the most services possible. (Id. pp. 21-22.) Finally, the SRO considered the parent's arguments that the DOE failed to place O. in the least restrictive environment, concluding that there was ample evidence before the CSE that the 6:1:1 placement with a 1:1 paraprofessional was adequate and that, while the CSE considered larger class sizes, there was no evidence in the record suggesting that larger class sizes would have been appropriate for O. to make progress. (Id. p. 24.)

The SRO therefore went on to consider the appropriateness of the DOE's proposed placement. The parent argued that the DOE would not have been able to implement the IEP at the proposed placement, but the SRO concluded that these arguments were inappropriate speculative challenges to how the IEP would have been implemented. (SRO Dec. pp. 25-26.) The SRO further concluded that the record evidence indicated that the assigned placement had the capacity to fulfill the requirements of the IEP, based on the testimony of the special education teacher before the IHO and that, accordingly, there was no evidence to support

a conclusion that the DOE would not have adequately implemented O.'s IEP via the proposed placement.  (Id. pp. 28-29.)

Accordingly, the SRO concluded that the evidence did not demonstrate that the IEP was either procedurally or substantively inadequate, nor that the proposed placement was inappropriate, and therefore found that the DOE had offered O. a FAPE for the 2011-12 school year.  (SRO Dec. p. 29.)  The parent now appeals from this decision.

## DISCUSSION

Legal Standard

The stated purpose of the IDEA is "to ensure that all children with disabilities have available to them a free appropriate public education."  20 U.S.C. § 1400(d)(1)(A) (LexisNexis 2006).  To achieve this goal, the Second Circuit has held that "States have an affirmative obligation to provide a basic floor of opportunity for all children with disabilities," which includes "an education 'likely to produce progress, not regression,' and one that 'affords the student with an opportunity greater than mere trivial advancement.'"  T.K. v. N.Y.C. Dep't of Educ., 810 F.3d 869, 875 (2d Cir. 2016) (quoting M.O. v. N.Y.C. Dep't of Educ., 793 F.3d 236, 239 (2d Cir. 2015) (internal modifications omitted)).

The "centerpiece" of the IDEA is the IEP.  Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ., 297 F.3d 195, 197 (2d Cir. 2002).  In order to ensure that a child receives a FAPE, the IEP "must include the child's present level of performance, goals for her improvement, and a plan about how to achieve that improvement."  T.K., 810 F.3d at 875.  Further, it must "be reasonably calculated to enable the child to receive educational benefits."  Frank G. v. Bd. of Educ. of Hyde Park, 459 F.3d 356, 363 (2d Cir. 2006) (internal quotation marks omitted).

If an IEP is procedurally or substantively deficient, parents may unilaterally reject the IEP's recommended placement in favor of sending their child to a private school and thereafter seeking reimbursement of tuition from the State. T.K., 810 F.3d at 875. An IEP may be procedurally deficient such that a FAPE was denied "only if the procedural inadequacies (I) impeded the child's right to a [FAPE]; (II) significantly impeded the parents' opportunity to participate in the decisionmaking process regarding the provision of a [FAPE] to the parents' child; or (III) caused a deprivation of educational benefits." 20 U.S.C. § 1415(f)(3)(E)(ii) (LexisNexis 2006). An IEP is substantively deficient if it fails to meet the requirements of the IDEA by providing a FAPE. See T.K., 810 F.3d at 875.

Even if procedural or substantive deficiencies exist, reimbursement is appropriate only when "the parents' private placement is appropriate to the child's needs and to the equities" of each particular case. T.K., 810 F.3d at 875 (quoting C.F. ex rel. R.F. v. N.Y.C. Dep't of Educ., 746 F.3d 68, 77 (2d Cir. 2014) (internal modifications omitted)). In New York, the DOE bears the burden of establishing the validity of the IEP; the parents bear the burden of establishing that the unilateral private placement was appropriate. T.K., 810 F.3d at 875; see also N.Y. Educ. Law § 4404(1)(c).

It is well established that "the role of the federal courts in reviewing state educational decisions under the IDEA is circumscribed." Gagliardo v. Arlington Cent. Sch. Dist., 489 F.3d 105, 112 (2d Cir. 2007) (internal quotation marks omitted). A court reviewing the decisions of an IHO and SRO "must engage in an independent review of the administrative record and make a determination based on a 'preponderance of the evidence.'" Id. (citation omitted). This review, however, "is by no means an invitation to courts to substitute their own notions of sound educational policy for those of the school authorities they review." R.C. ex rel.

M.C. v. Byram Hills Sch. Dist., 906 F. Supp. 2d 256, 267 (S.D.N.Y. 2012) (citation omitted). "[D]eterminations regarding the substantive adequacy of an IEP should be afforded more weight than determinations concerning whether the IEP was developed according to the proper procedures." M.H. v. N.Y.C. Dep't of Educ., 685 F.3d 217, 244 (2d Cir. 2012). Additionally, "the district court should afford more deference when its review is based entirely on the same evidence as that before the SRO than when the district court has before it additional evidence that was not considered by the state agency." Id.

The district court need not, however, defer to a determination that is not "grounded in thorough and logical reasoning," and its review should involve "the kinds of considerations that normally determine whether any particular judgment is persuasive, for example whether the decision being reviewed is well-reasoned, and whether it was based on substantially greater familiarity with the evidence and the witnesses than the reviewing court." Id.

However, reviewing courts "are expected to give 'due weight' to administrative proceedings," because "the judiciary generally lack[s] the specialized knowledge and experience necessary to resolve persistent and difficult questions of education policy." M.S. v. Yonkers Bd. of Educ., 231 F.3d 96, 102 (2d Cir. 2000). Additionally, "[w]hen an IHO and SRO reach conflicting conclusions, [courts should] defer to the final decision of the state authorities, that is, the SRO's decision." R.E. v. N.Y.C. Dep't of Educ., 694 F.3d 167, 184-85 (2d Cir. 2012).

As discussed above, parents challenging the adequacy of an IEP may unilaterally place their child in a private school and seek retroactive tuition reimbursement from the local

school district. 20 U.S.C. § 1412(a)(10)(C). Under the three-part Burlington/Carter test,[6] parents are entitled to reimbursement if: (1) the district's proposed placement violated the IDEA, (2) the parents' alternative private placement was appropriate, and (3) the equities favor reimbursement. See T.M. ex rel. A.M. v. Cornwall Cent. Sch. Dist., 752 F.3d 145, 152 (2d Cir. 2014).

Under the first prong of the Burlington/Carter test, there is a "two-part inquiry" for reviewing administrative determinations as to the provision of a FAPE. R.C. ex rel. M.C., 906 F. Supp. 2d at 267-68. First, the reviewing court determines whether "the State complied with the procedures set forth" by the IDEA; second, the court determines whether the IEP "developed through the Act's procedures [is] reasonably calculated to enable the child to receive educational benefits." Id. As to the second prong, the same standard generally applies in determining whether a school district's placement is appropriate as applies in determining whether a private placement is appropriate. See Frank G., 459 F.3d at 364.

Consideration of Plaintiff's Additional Evidence

Plaintiff has submitted two supplemental reports that she requests this Court consider pursuant to 20 U.S.C. § 1415(i)(2). The first of these is an evaluation of O. by Dr. Ami Norris-Brilliant (the "Norris-Brilliant Report"), which was conducted in 2013. (Docket entry no. 68, Ex. C.) The second is a speech and language evaluation dated December 25, 2012, by CommuniKids. (Docket entry no. 68, Ex. D.) The Court declines to consider the Norris-Brilliant Report and the Communikids Report, given that they are based on evaluations

---

[6] Florence Cnty. Sch. Dist. Four v. Carter, 510 U.S. 7 (1993); Sch. Comm. of the Town of Burlington v. Dep't of Educ., 471 U.S. 359 (1985).

conducted more than a year after the CSE and IEP at issue here and therefore do not provide useful information about O.'s condition or needs at the time of the CSE or the creation of the May 2011 IEP.  See, e.g., J.G. v. Kiryas Joel Union Free Sch. Dist., 777 F. Supp. 2d 606, 636 n.26 (S.D.N.Y. 2011) (excluding from consideration reports created roughly a year and a half after the creation of the IEP being challenged as "irrelevant" to the adequacy of the IEP).

Procedural Adequacy of the IEP and Proposed Placement

As noted above, an IEP is procedurally deficient only if the procedural inadequacies amount to a denial of a FAPE, significantly impede the parent's opportunity to participate in the decisionmaking process, or cause a deprivation of educational benefits.  See 20 U.S.C. § 1415(f)(3)(E)(ii).  Plaintiff identifies four alleged procedural violations in this case: (1) the CSE's failure to conduct occupational therapy and speech evaluations, (2) the CSE's reliance on an incomplete psycho-educational evaluation, (3) failure of the IEP to include a provision for parent training and counseling, and (4) inadequate notice to the parent of the proposed placement.  For the reasons set forth below, and for substantially the reasons set forth in the well-documented and well-reasoned opinion of the SRO, the Court concludes that none of these alleged violations meets the standards required to demonstrate procedural deficiency of an IEP or a proposed placement.

The parent first argues that the CSE's failure to conduct occupational therapy and speech evaluations was a procedural violation.  The SRO's opinion includes a comprehensive, five-page review of the record before the IHO, and concludes that the CSE considered appropriate evaluative material.  Most notably, an as explained in the SRO's decision, the CSE reviewed and considered a progress report from the Rebecca School that contained occupational

and speech progress reports and goals, which were closely related to the goals that ultimately appeared in O.'s IEP.  (See Ex. 9, pp. 9-13, and Ex. 6, pp. 8-12.)  The CSE's consideration of those private school reports as a substitute for DOE evaluations was not a procedural violation. See, e.g., N.K. v. N.Y.C. Dep't of Educ., 961 F. Supp. 2d 577, 587-88 (S.D.N.Y. 2013) ("Although the CSE did not conduct its own evaluation . . . it relied on a December 2010 report from the Rebecca School that evaluated these needs.")

The parents' argument that O. should have received a psychoeducational evaluation in both English and Hebrew is similarly unavailing.  As the SRO noted, the record indicates that O. cannot easily be evaluated using standard psychological tests, and Y.D.'s own testimony before the IHO noted that O.'s level of functional development and inability to focus appeared to be the driving factor behind the evaluators' inability to engage O.  (See SRO Dec. p. 14; Tr. 356.)  Plaintiff, accordingly, has not demonstrated that the DOE's failure to conduct a bilingual evaluation caused a deprivation of educational benefits or otherwise amounted to a procedural violation of the IDEA.

The parent also objects to the IEP on the ground that it does not provide for parent training and counseling, as required by the IDEA.  Although the IEP does not make such provision, the Second Circuit has held that, while "the failure to include parent counseling in the IEP may, in some cases (particularly when aggregated with other violations), result in a denial of a FAPE, in the ordinary case that failure, standing alone, is not sufficient." R.E., 694 F.3d at 191.  Here, there is no evidence indicating that the failure to include parent counseling in O.'s IEP rose to the level of a procedural violation.

Finally, the parent objects to the DOE's proposed placement on the procedural grounds that she did not have a meaningful opportunity to learn about the placement, nor did she

receive reasonably timed notice of the proposed placement. The record is clear, however, that the parent learned of the placement, arranged to visit the school, and did in fact visit the school, all prior to the start of the school year, and the parent has not identified any authority indicating that notice was not reasonably timed, or that the parent was unable to meaningfully participate in the placement process, under similar circumstances. Cf. C.U. v. N.Y.C. Dep't of Educ., 23 F. Supp. 3d 210, 227-28 (S.D.N.Y. 2014) ("Having been unable to arrange a visit to Horan or to inquire about its facilities or programs, the Parents enrolled the Student in Rebecca on July 5. These delays and lack of response by the DOE violated the Parents' procedural right to evaluate the school placement so that they could make an informed decision about the child's school."). Rather, as the SRO held, the record is clear that the parent was able to visit the proposed placement and speak with personnel at the school prior to the start of the school year.

For these reasons, and for substantially the reasons stated in the SRO's well-reasoned decision, the Court concludes that there were no procedural violations in O.'s IEP or placement that amounted to the denial of a FAPE.

Substantive Adequacy of the IEP and Proposed Placement

To fulfill the requirements of federal law, an IEP must be "likely to produce progress, not regression," and must afford the student "an opportunity greater than mere trivial advancement." T.P. ex rel. S.P. v. Mamaroneck Union Free Sch. Dist., 554 F.3d 247, 254 (2d Cir. 2009). Plaintiff identifies two alleged substantive violations in this case: (1) the failure of the IEP to address all of O.'s needs, including his sensory diet, out-of-school services, and

transition plan; and (2) the inability of the placement school to implement the IEP.[7]  Having reviewed the administrative record, and for substantially the reasons set forth in the well-documented and well-reasoned opinion of the SRO, the Court concludes that the IEP and proposed placement for O. in the 2011-12 school year was substantively adequate.

>First, the parent's three identified omissions in the IEP do not demonstrate substantive inadequacy.  The IEP did not contain a specific sensory diet, transition plan, or provision for out-of-school services for O.  As the SRO concluded, however, an IEP is not required to contain any of these provisions to be substantively adequate, and the SRO's determination as to the adequacy of the content of the IEP is appropriately afforded substantial deference on questions, like this, of educational policy.  See T.Y. v. N.Y.C. Dep't of Educ., 584 F.3d 412, 418 (2d Cir. 2009) ("[B]ecause administrative agencies have special expertise in making judgments concerning student progress, deference is particularly important when assessing an IEP's substantive adequacy.")  Courts have generally concluded that an IEP is not required to contain a detailed sensory diet, especially where, as here, the IEP does contain specific information about O.'s sensory needs and suggests appropriate ways to manage them. See G.B. v. N.Y.C. Dep't of Educ., 145 F. Supp. 3d 230, 250 (S.D.N.Y. 2015) (concluding that an IEP contained adequate discussion of sensory needs and noting that "[w]hether there is enough detail in the goals and strategies of the IEP is precisely the type of issue upon which the IDEA requires deference to the expertise of the administrative officers" (internal quotation marks omitted)).  Additionally, the Second Circuit has made clear that an IEP is not required to

---

[7] The parent also argues, based on the supplemental reports provided in connection with this motion, that the IEP provided for insufficient therapy.  Because the parent's arguments are wholly premised on evidence the Court finds inappropriate for consideration in this proceeding, the parent has not identified a substantive violation based on the IEP's therapeutic provisions.

provide a transition plan.  R.E., 694 F.3d at 195 (finding that parents' substantive challenge based on the failure to include a transition plan could not succeed because, as here, the parents "have not identified any legal requirement that an IEP contain a transition plan").  Similarly, as the SRO concluded, the IEP was not deficient for a lack of out-of-school services, where there is no evidence that additional services would be necessary to ensure O. made progress in his school classroom, and the provision of out-of-school services would only be aimed at managing O.'s behavior outside of the school day.  See, e.g., A.D. v. N.Y.C. Dep't of Educ., 2008 WL 8993558, at * (S.D.N.Y. Apr. 21, 2008) ("[S]ervices aimed at correcting . . . home behaviors cannot be said to be reasonably calculated to enable the child to receive educational benefits." (Internal quotation marks omitted)).

        Additionally, the parent's challenge to the ability of the proposed placement to fulfill the requirements of O.'s IEP is inappropriately speculative.  The parent asserts that her tour of the proposed school indicated that O. would be placed in an inappropriate classroom, and Y.D. was left unclear about how O. would receive his necessary related services.  She also asserts that the DOE has not adequately provided some services to other students.  The Second Circuit has made clear, however, that "[s]peculation that the school district will not adequately adhere to the IEP is not an appropriate basis for unilateral placement."  R.E., 694 F.3d at 195. The parent does not identify any requirement of O.'s IEP that the proposed placement lacked the capacity to implement, but rather impermissibly speculates that O.'s IEP would not properly be implemented.  This is an inappropriate basis for a challenge to the substantive adequacy of the IEP itself.  See M.O., 793 F.3d at 245 ("[T]he substantive adequacy of the IEP must be determined by reference to the written IEP itself.").

        Accordingly, the Court concludes that, for the reasons outlined above and for the

reasons set forth in the well-reasoned decision of the SRO, which is deserving of considerable deference on matters of substantive educational policy, the 2011-12 IEP was substantively adequate.  Given this conclusion, consideration of the remaining Burlington/Carter factors is unnecessary, and the parent's request for reimbursement must be denied.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is granted, and Plaintiff's motion is denied.  This Memorandum Opinion and Order resolves docket entry nos. 66 and 71.  The Clerk of Court is respectfully requested to enter judgment for Defendants and close this case.

SO ORDERED.

Dated: New York, New York
       March 20, 2017

 /s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
United States District Judge